UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAUNA ESTEP,

    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 15-10329

DISTRICT JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PATRICIA T. MORRIS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 11, 17, 18)

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Estep is not disabled. Accordingly, **IT IS RECOMMENDED** that Estep's Motion for Summary Judgment (Doc. 11, 17) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 18) be **GRANTED**.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq*. (Doc. 2, Tr. 137.) The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 17, 18).

Plaintiff Tauna Estep was forty-seven years old as of the alleged onset date of her disability, May 6, 2011. (Tr. 137). The application was denied on May 14, 2012. (Tr. at 80-81). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Janice Bruning on August 1, 2013. (Tr. 28-67). On September 26, 2013, the ALJ issued a written decision in which she found Plaintiff was not disabled. (Tr. 11-27). On November 20, 2014, the Appeals Council denied review. (Tr. 1-4). Plaintiff filed for judicial review of that final decision on January 26, 2015. (Doc. 1).

B.     **Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the

reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.  Framework for Disability Determinations

Under the Act, "DIB and [Supplemental Security Income] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found Plaintiff was not disabled under the Act. (Tr. 22-23). The ALJ found at Step One that Plaintiff met the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity following her alleged onset date of May 6, 2011. (Tr. 16). At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: "obesity, mild degenerative changes lumbar spine, depression, and anxiety/posttraumatic stress disorder." (*Id.*). At Step Three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 16-17). The ALJ then found that Plaintiff had

the residual functional capacity ("RFC") to perform light work, except that Plaintiff should "never climb ladders, ropes or scaffolds; no more than occasionally climb stairs or ramps; and no more than occasionally balance, stoop, crouch, crawl, and kneel. The claimant must avoid concentrated exposure to vibration and avoid even moderate exposure to work hazards (such as unprotected heights and dangerous moving machinery); no public contact for work-related purposes; and no more than occasional contact with co-workers and supervisors. The work is limited to 3 to 4-step repeated routine tasks.'" (Tr. 18-21). At Step Four, the ALJ noted that Plaintiff could not perform any past relevant work. (Tr. 21). At Step Five, the ALJ found that a significant number of jobs exist which Plaintiff could perform despite her limitations. (Tr. 21-22). As a result, the ALJ found Plaintiff was not disabled under the Act. (Tr. 21-22).

### E. Administrative Record

Plaintiff was treated by Dr. Sachin Nagarkar, M.D., from August of 2011 through March 2012 for anxiety. (Tr. 263-71, 308-16, 364-69). Plaintiff was alert and oriented times three, showed no thought disorders, pressured speech, flight of ideas, delusions, or hallucinations, and showed good insight and judgment. (Tr. 266, 316).

An MRI of Plaintiff's lumbar spine taken on June 28, 2011, revealed "[n]o disc herniation, central canal or foraminal stenosis" and "[m]ild L4-5 and L5-S1 facet degenerative changes." (Tr. 282). A stress test taken on June 23, 2011 showed "no stress induced reversible ischemia[,] [n]o fixed defect" and "[l]eft ventricular ejection fraction calculated at 70%." (Tr. 283). Neurological examinations performed by Dr. Scott Lazzara, M.D., on February 6, 2012 showed 5/5 strength in Plaintiff's hands and arms, an ability to walk on heels and toes, and that

Plaintiff was able to perform all exertional tasks limited only to carrying, pushing and pulling less than 40 pounds. (Tr. 300-01).

Plaintiff also sought treatment from Dr. Janet Sutton, D.O. from January 2012 through March 2013 regarding vaginal and uterine bleeding. (Tr. 317-63).

Plaintiff counseled with Patricia Sullivan, MSW from May 2011 through February 2012. (Tr. 328-51). Ms. Sullivan noted that Plaintiff's current issue resulted from an incident which occurred at her prior job. (Tr. 329). Ms. Sullivan stated "client is clearly in shock over recent event at work, dazed, lower functioning." (Tr. 330).

Plaintiff underwent a mental status examination on January 27, 2011, with Dr. Harold Sommerschield, Ph.D.. (Tr. 251-54). He noted that Plaintiff reported that only after an incident at work in May of 2011 did she experience anxiety and depression. (Tr. 251). Plaintiff indicated she was calmer at home and that she has "emotional distress coping with people who do not share her values. She has emotional distress 'leaving behind 200 volunteers" from her prior work. (Tr. 253.) Plaintiff was found to have "mildly obsessive thoughts associated with her past employment" but was well oriented as to time, person, and place. (Tr. 254). Plaintiff was diagnosed with anxiety and posttraumatic stress disorder and was assessed a fair prognosis and a GAF score of 51. (Tr. 255-56).

Plaintiff testified, at the administrative hearing, that she has a high school education, lives in a house with her husband, and worked, from 1998 to 2005, as a program officer for the Harding Foundation. (Tr. 32-33). Plaintiff traveled to non-profit organizations to assess their fitness for submitted grant requests. (Tr. 33). Plaintiff also was a director for volunteer services and she "oversaw 200 volunteers, in every corner of the health system, extensive fundraising,

we had a volunteer board that I oversaw, the volunteers ran the gift shop…I had to train them for their positions…" (Tr. 34-35). When asked why she stopped working, Plaintiff responded because of her "anxiety - - it was like an overnight thing." (Tr. 36). However, later when the ALJ asked Plaintiff if there was anything else she wanted to tell her anything else, Plaintiff responded, "I wish I was still at work instead of sitting here." (Tr. 44). Then, when asked whether something happened at work to upset her, Plaintiff responded: "Yeah, we had a big - - they were cutting back in staff, and not being upfront about it. A lot of people were starting to lose their jobs, and instead of just saying we've eliminated your position and walking me out, my boss made up completely incorrect information about me, and it's still in my permanent record. I mean, I just couldn't believe it. I've never had any troubles at work, ever. It was – It was very traumatizing." (Tr. 43-44). Then when asked whether she was laid off, Plaintiff answered, "No, it was getting to that direction, I believe. It's – they were laying off staff and coming to me and wanting me to put volunteers in positions that were previously supported by paid staff, and I wasn't going to do that. It wasn't going to work even if I got people to agree to it, it's completely against everything that I believe in. It was just – it's a faith-based hospital and it was difficult for me with my faith to wrap my head around people acting like that . . . ." (Tr. 44-45). Plaintiff testified that she did not have any outbursts or other behavior that caused her to be fired but that there had been a recommendation for a "permanent write-up in [her] file" and that Plaintiff was asked to "sign this paper" but Plaintiff refused to do so and left her job. (Tr. 46-48). When asked whether Plaintiff has ever "thought about looking for another job" Plaintiff responded, "Yeah, I always think about it." (Tr. 48).

7

Plaintiff also stated that her medications "make me foggy" and that she has difficulty thinking and concentrating. (*Id.*) She also experiences crying spells once a week and has panic attacks, when she feels her heart racing and she feels like she cannot breathe, every couple of months. (Tr. 37-38). Plaintiff indicated she can walk for ten to fifteen minutes, sit for one-half or one hour, lift a gallon of milk with two hands, can climb stairs but she has "to do it slow, and hold on" and that "[e]verything hurts." (Tr. 39). Plaintiff stated that her husband does the cooking and shopping and that she does dishes when her "hands aren't hurting too badly" and that she does some cleaning for ten minutes at a time. (Tr. 40-41). Plaintiff started attending church one month before the hearing, she loved to read but finds that she has to "reread sections a lot" now, watches television "in small increments[,]" uses a cellular phone to text, and maintains a Facebook and an email account. (Tr. 42-43). Plaintiff indicated her pain level is five out of ten on average and that her medications take the pain down to three or four. (Tr. 53-54).

The ALJ asked the vocational expert (VE) to consider a person with Plaintiff's background who

> can lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk a total of six hours during an eight hour work day, sit at least six hours during an eight hour work day, never climb ladders, ropes, and scaffolding, no more than occasional climbing ramps and stairs, [and who can] balance, stoop, crouch, kneel, crawl, bend [and] twist. Such an individual should avoid concentrated exposure to vibration, and should avoid heat exposure to work hazards, such as unprotected heights, and dangerous moving machinery. Such an individual is limited to three to four steps simple, repeated, routine tasks and should not come in contact with the public for work-related purposes, and no more than occasional contact with coworkers and supervisors.

(Tr. 63-64.) The VE responded that such a person could perform the 2,000 Michigan and 50,000 national jobs as a folding machine operator, the 1,000 Michigan and 40,000 national jobs as a linen grader, and the 2,000 Michigan and 100,000 national jobs as a bagger for garments. (Tr. 64). When the ALJ restricted the person to lifting and carrying only ten pounds occasionally, and standing or walking for only two hours out of an eight hour workday, and would have a sit-stand option such that after forty-five minutes of work, such a person could stand one to two minutes. After these additions to the hypothetical, the VE responded that such a person could perform the sedentary jobs of document preparer (1,000 Michigan, 30,000 national), final assembler (2,000 Michigan, 50,000 national), and stuffer for toys and scoring equipment (1,000 Michigan, 30,000 national). (Tr. 65-66). The VE indicated that his testimony was consistent with the Dictionary of Occupational Titles (DOT) for exertional limitations but that non-exertional limitations are not addressed by the DOT and were based on the information in the dictionary related to job tasks, responsibilities and demands. (Tr. 66-67).

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the

9

Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at \*2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at \*2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §

404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be

disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

  (i)   [D]aily activities;
  (ii)  The location, duration, frequency, and intensity of . . . pain;
  (iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v) Treatment, other than medication, . . . received for relief of . . . pain;
(vi) Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

**G. Analysis**

Plaintiff argues that the ALJ erred in the following ways: 1) by "failing to consider the opinions of Patricia Sullivan, MSW, who was Plaintiff's treating clinical social worker during several months in 2011"; 2) by "rejecting out of hand the lay statement of Plaintiff's husband, with no analysis whatsoever of the content of that statement"; and 3) by rendering "an RFC

assessment [that] fails to account for her own finding that Plaintiff had moderate limitations with respect to concentration, persistence, or pace." (Doc. 17.)

### 1. Social worker opinion

Plaintiff argues that the opinion of her clinical social worker, Patricia Sullivan, MSW, was disregarded, citing that Ms. Sullivan "noted plaintiff's severe reaction to stress, her anxiety, and her poor concentration on their very first visit in May 2011." (Doc. 17 at PGID 446). Plaintiff notes that her records continued to show these symptoms and that the ALJ was "obliged to consider all this evidence in formulating plaintiff's RFC, but failed to do so." (Doc. 17 at PGID 447).

First, I note that the ALJ's RFC did incorporate some limitations based on Plaintiff's lessened ability to concentrate, limiting the potential jobs to those requiring no more than three to four step tasks. (Tr. 63-66). The ALJ also incorporated some limitations due to Plaintiff's own testimony regarding social functioning. (Tr. 20). In addition, the ALJ indicated she had considered all the opinion evidence and had examined the medical record as a whole and had considered all the evidence. (Tr. 18, 21). This was sufficient. "Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). In addition, since a social worker is merely an "other source" rather than an "acceptable medical source," her opinion is not entitled

to any deference and the ALJ does not need to set forth good reasons for rejecting her opinion. *Hickox v. Comm'r of Soc. Sec.*, 2010 WL 3385528, at *6 (W.D. Mich. Aug. 2, 2010); 20 C.F.R. § 404.1527(a), 1513(a) and 416.927(a), and 416.913(a).

### 2. Statement of Plaintiff's husband

The statement referred to by Plaintiff is the Third Party Function Report filed by Plaintiff's husband, Jerry Estep. (Tr. 211-18). Plaintiff criticizes the ALJ for giving the statement "no weight as to the issue of disability" because Plaintiff's husband "is not a treating source and has a natural and financial interest in seeing the claimant getting benefits." (Tr. 20; Doc. 17 at PGID 447). In the report, Plaintiff's husband indicates that Plaintiff has to "nap daily" and that she "has memory and concentration problems." (Tr. 211). As noted above, the ALJ's RFC did incorporate some limitations based on Plaintiff's lessened ability to concentrate, limiting the potential jobs to those requiring no more than three to four step tasks (Tr. 63-66) and incorporated some limitations due to Plaintiff's own testimony regarding social functioning (Tr. 20).

To the extent the ALJ rejected Plaintiff's husband's assessments of Plaintiff's abilities, it was not improper for the ALJ to do so based on the consideration that Plaintiff's husband "was not a disinterested third party witness as []he had a financial interest in Plaintiff receiving disability income[.]" *Hyson v. Comm'r of Soc. Sec.*, No. 5:12CV1831, 2013 WL 2456378, at *20 (N.D. Ohio June 5, 2013); *accord Ford v. Barnhart*, 57 F. App'x 984, 988-89 (3rd Cir. 2003) (finding ALJ properly rejected testimony of an ex-spouse who had a financial interest in the plaintiff receiving disability income due to her custody of their minor child).

### 3. Limitations as to concentration, persistence or pace

Plaintiff argues that a limitation to routine, repetitive work may not adequately account for moderate limitations in concentration, persistence or pace. (Doc. 17 at PGID 450). Plaintiff further argues that the ALJ found Plaintiff had such moderate limitations when analyzing whether she met or equaled a Listing. (Doc. 17 at PGID 448; Tr. 17). Although Plaintiff's RFC limited her to repeated routine tasks that only require three to four-step tasks, Plaintiff argues that these limitations do not address Plaintiff's inability to stay on task while performing a job. (Doc. 17 at PGID 448).

Plaintiff cites *Brown v. Comm'r of Soc. Sec.*, 672 F. Supp. 2d 794, 797 (E.D. Mich. 2009), in which a "moderate" limitation to concentration, persistence, or pace was found to necessitate some sort of limitation in terms of the frequency or consistency of the ability to concentrate, and *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005), in which a "moderate" limitation to concentration, persistence, or pace was found to require more than a limitation to "jobs entailing no more than simple, routine, unskilled work."

The question of whether restrictions similar to these can accommodate a finding of moderate limitations to concentration, persistence, or pace have been addressed frequently in this district. Restating the history of those cases once again would be unnecessarily duplicative. See *Leidlein v. Comm'r of Soc. Sec.*, No. 14-10718, 2015 WL 1439810, at *9 (E.D. Mich. Mar. 27, 2015) (collecting cases); *Brewer v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14039, 2011 WL 7546792, at *12 (E.D. Mich. Dec. 11, 2011) (same); *McNamara v. Comm'r of Soc. Sec.*, No. CIV.A. 11-10331, 2011 WL 7025855, at *12 (E.D. Mich. Dec. 1, 2011) (same). Suffice it to say that "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes

a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must "look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682 at * 7 (E.D. Mich. May 17, 2011). Courts have found no error where there is an "inconsistent record of difficulties with concentration, persistence or pace" and where there is a "dearth of evidence . . . that Plaintiff's 'moderate' CPP rating would preclude her from performing all simple work." *Brewer v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14039, 2011 WL 7546792, at *12 (E.D. Mich. Dec. 11, 2011); *see also Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *10 (E.D. Mich. Mar. 31, 2014).

In the instant case, there is substantial evidence of record supporting the ALJ's decision and virtually no evidence of disabling limitations other than Plaintiff's self-reported symptoms of anxiety and loss of concentration. Ms. Sullivan noted that Plaintiff's current mental health issues were not due to a long-term condition but rather regarded an incident at work which shocked Plaintiff. (Tr. 329-30). Dr. Sommerschield also noted that Plaintiff's symptoms were reported to have begun only after an incident at work in May of 2011. (Tr. 251-53). Plaintiff was found to have "mildly obsessive thoughts associated with her past employment" but was well oriented as to time, person, and place. (Tr. 254). Plaintiff's own testimony reveals that she would prefer to have kept her job but for Plaintiff's superiors treating employees in a manner that was improper in Plaintiff's mind. (Tr. 44-48). When asked whether Plaintiff has ever "thought about looking for another job" Plaintiff responded, "Yeah, I always think about it." (Tr. 48). More importantly, there is no medical evidence contradicting the ALJ's findings. There was no medical opinion regarding Plaintiff's abilities to perform functions despite her

symptoms, *i.e.*, there was no mental RFC analysis of record. Having reviewed the totality of the medical evidence, I suggest that the ALJ's assessment is supported by substantial evidence.

### H. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 11, 17) be **DENIED**, the Commissioner's Motion (Doc. 18) be **GRANTED**, and that this case be **AFFIRMED**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it

pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 16, 2016                     S/PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 16, 2016                     By s/Kristen Krawczyk
                                            Case Manager to Magistrate Judge Morris