UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAUNA LYNN ESTEP,

Plaintiff,

CASE NO. 15-CV-10329
HONORABLE GEORGE CARAM STEEH

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_________________________________/

**OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC. 19), SUSTAINING PLAINTIFF'S OBJECTIONS (DOC. 20), GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOCS. 11, 17), DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 18) AND REMANDING TO THE SSA**

Plaintiff appeals from the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). This matter is before the Court on the parties' cross-motions for summary judgment. The motions were referred to Magistrate Judge Patricia Morris for a report and recommendation ("R&R"). The Magistrate Judge recommends that the Court deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. (Doc. 18). Plaintiff has filed objections to the Magistrate Judge's R&R. (Doc. 20). For the reasons that follow, the Magistrate Judge's R&R will be rejected; Plaintiff's objections will be sustained, and her motion for summary judgment will be granted; Defendant's motion for summary judgment will be denied; the decision of the commissioner will be reversed; and this matter will be remanded to the commissioner for further consideration in light of this opinion.

## I. BACKGROUND

Plaintiff does not object to the Magistrate Judge's recitation of the facts and procedural history in the R&R. The Court adopts and incorporates that portion of the R&R in full without repeating it here. This opinion addresses Plaintiff's objections to the R&R. Additional facts will be set forth in the analysis below, as needed.

## II. LEGAL STANDARDS

### A. Objections to a Magistrate Judge's R&R

A party may file timely written objections to a magistrate judge's proposed findings and recommendations. 28 U.S.C. § 636(b)(1). "A judge of the court shall make a *de novo* determination of those portions of a report or specified proposed findings or recommendations to which objection is made." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

### B. Judicial Review of an ALJ's Decision

Judicial review of a Social Security disability benefits application is limited to determining whether "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a

preponderance." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 399 (1938). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). The substantial evidence standard is deferential and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference with the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

When determining whether the commissioner's decision is supported by substantial evidence, the reviewing court must take into consideration the entire record as a whole. *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir. 1973). If the Appeals Council declines to review the ALJ's decision, the court's review is limited to the record and evidence before the ALJ, *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993), regardless if the ALJ actually cited to the evidence. *Walker v. Sec'y of HHS*, 884 F.2d 241, 245 (6th Cir. 1989). Nonetheless, there is no requirement that the reviewing court discuss all of the evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

## III. ANALYSIS

### A. The ALJ's Failure to Discuss the Notes of Plaintiff's Social Worker

Plaintiff first objects that "the Magistrate Judge improperly excused the ALJ's failure to explicitly consider the opinions of Patricia Sullivan, MSW," in determining Plaintiff's residual functional capacity (RFC). As the Magistrate Judge acknowledged, the ALJ's written decision does not expressly mention Plaintiff's social worker, Ms. Sullivan, nor does it cite Ms. Sullivan's notes concerning Plaintiff. The Magistrate Judge nonetheless held that

the ALJ's failure to expressly consider Ms. Sullivan's notes did not constitute reversible error. The Magistrate Judge noted that the ALJ stated in her decision that she had "careful[ly] consider[ed] . . . the entire record." (Doc. 7-2 at 19, 22). The Magistrate Judge further noted that the ALJ's assessment of Plaintiff's RFC did incorporate some of Plaintiff's limitations that are documented in Ms. Sullivan's notes. Since a social worker is not an "acceptable medical source," but rather an "other source" entitled to no special deference, the Magistrate Judge concluded that the ALJ had not erred just because she failed to specifically mention Ms. Sullivan's observations or opinions.

The Court respectfully disagrees with the Magistrate Judge and agrees with Plaintiff that the ALJ erred in failing to discuss Ms. Sullivan's notes in her decision. The commissioner's disability determination must be based on "all evidence available in [the claimant's] case record." 42 U.S.C. § 423(d)(5)(B). In order for a disability claimant to establish that he or she has an impairment, the claimant must submit evidence from an "acceptable medical source." 20 C.F.R. § 404.1513(a). "Acceptable medical sources" include licensed physicians, psychologists, optometrists, podiatrists, and "speech-language pathologists." *Id.* Evidence from acceptable medical sources is also relevant in assessing the claimant's RFC. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). Certain acceptable medical sources are classified as "treating sources," whose opinions are ordinarily entitled to "controlling weight." 20 C.F.R. §§ 404.1502, 404.1527(c)(2); *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). In addition to evidence from acceptable medical sources, the claimant may also submit evidence from "other sources." 20 C.F.R. § 404.1513(d). "Other sources" include medical sources that are not "acceptable medical sources," educational personnel, "[p]ublic and private social welfare agency personnel," and "[o]ther non-medical

sources." *Id.* Unlike "acceptable medical sources," "other sources" are never classified as "treating sources" and therefore they are not entitled to particular deference under the Social Security regulations. *See* SSR 06-03p.

In weighing an opinion from an "acceptable medical source," the commissioner is required to consider a number of factors:

- The "[e]xamining relationship" between the source and the claimant;
- The "[t]reatment relationship" between the source and the claimant, including the "[l]ength of the treatment relationship and the frequency of examination," and the "[n]ature and extent of the treatment relationship";
- The support or evidence for the opinion, including "medical signs and laboratory findings";
- The extent to which the opinion is consistent with the rest of the claimant's record;
- The source's medical speciality; and
- "Other factors."

20 C.F.R. § 404.1527(c); *see also* SSR 06-03p. The Social Security regulations do not provide a set of factors for the commissioner to weigh when considering evidence from "other sources"—even "other sources" who have provided medical treatment or have seen the claimant in their professional capacity. But the commissioner explained in Social Security Ruling 06-03p that

> these same factors [in 20 C.F.R. § 404.1527(c)] can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as

> teachers and school counselors, who have seen the individual in their professional capacity.

Moreover, it will rarely be enough for the commissioner to silently "consider" the above-mentioned factors in deciding how much weight to give to an "other source" who has seen the claimant in the source's professional capacity. Rather,

> [s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources,"* or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p (emphasis added).

The Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an "other source" who has seen the claimant in the source's professional capacity. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'" (quoting SSR 06-03p) (alteration in original)); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (criticizing the ALJ's failure to mention the claimant's therapist who saw the claimant on a regular basis for thirteen months); *Cole v. Astrue*, 661 F.3d 931, 939 & n.4 (6th Cir. 2011) (holding that a social worker was an "other source" entitled to consideration "due to her expertise and long-term relationship" with the claimant and that the ALJ had erred in failing to mention her); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007)

(refusing to apply SSR 06-03p retroactively, but criticizing the ALJ's failure to provide any rationale for the ALJ's decision to ignore the opinion of a nurse practitioner other than that she "is neither a medical doctor nor a vocational expert, and thus lacks the credentials for making" a relevant diagnosis); *see also Edwards v. Comm'r of Soc. Sec.*, No. 1:14-CV-832, 2016 WL 54690, at *7 (W.D. Mich. Jan. 5, 2016) ("While the ALJ is not required to explicitly discuss each of [the 20 C.F.R. § 404.1527(c)] factors [in weighing an 'other source'], the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment."); *Cappo v. Comm'r of Soc. Sec.*, No. 2:14-CV-210, 2015 WL 6510474, at *8-*9 (W.D. Mich. Oct. 28, 2015) (finding that an ALJ had not erred by discounting a social worker's opinion where the ALJ had determined that the social worker's opinion was inconsistent with the claimant's own reported activity level and the observations of other medical providers); *Drain v. Comm'r of Soc. Sec.*, No. 14-CV-12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) ("So long as the ALJ addresses the opinion of a social worker and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."); *Duderstadt v. Colvin*, No. 3:13-CV-302, 2014 WL 3508897, at *10-11 (S.D. Ohio July 15, 2014)*, report and recommendation adopted sub nom. Duderstadt v. Comm'r of Soc. Sec.*, No. 3:13-CV-302, 2014 WL 4829498 (S.D. Ohio Sept. 29, 2014) (remanding where the "ALJ's decision neither consider[ed] nor mention[ed] the supportability or consistency of the opinion provided by [the claimant's therapist] and [did] not refer to any other regulatory factor as a ground for rejected his opinions").

In the instant case, the ALJ erred by failing to explain the weight she gave to the opinions of Ms. Sullivan, Plaintiff's social worker. Indeed, the ALJ did not even mention Ms. Sullivan. This is a serious oversight, given that Ms. Sullivan appears to have counseled

Plaintiff for a period of about eight months. (Doc. 7-7 at 88, 101). In the administrative record, there are some twenty-three pages of handwritten notes and other documents from Ms. Sullivan's sessions with Plaintiff. (Doc. 7-7 at 80-102). Many of Ms. Sullivan's notes appear have been based on Plaintiff's self-reported symptoms, but Ms. Sullivan also made her own observations. At Ms. Sullivan's first meeting with Plaintiff, in May 2011, Ms. Sullivan determined that Plaintiff was "experiencing a stress reaction [which is] severe." (Doc. 7-7 at 81). She found that Plaintiff suffered from acute stress disorder, adjustment disorder, and post-traumatic stress disorder (PTSD). *Id.* Ms. Sullivan observed several times over the next few months that Plaintiff was still experiencing PTSD-like symptoms and was having anxiety problems. (Doc. 7-7 at 88-89). In August 2011, Ms. Sullivan noted that Plaintiff had reported problems concentrating. (Doc. 7-7 at 92). She also noted that Plaintiff was frustrated and surprised that she had still not recovered from a traumatizing incident at her work. *Id.* Ms. Sullivan made similar notes over the next few months and also noted meeting with Plaintiff's attorney to discuss Plaintiff's workers' compensation case. (Doc. 7-7 at 95, 101). In December 2011, Ms. Sullivan noted that Plaintiff reported being "[e]xtremely tired" and "in pain." (Doc. 7-7 at 101). Plaintiff saw Ms. Sullivan for a final time in January 2012, and Ms. Sullivan noted that Plaintiff was "in good spirits" despite her "chronic [illegible] and nervous, anxious overall feelings." *Id.*

Therefore, ALJ violated SSR 06-03p when she failed to explain the weight that she gave to Ms. Sullivan's opinions about Plaintiff (or even mention Ms. Sullivan). And given that there is nothing in the ALJ's decision that indirectly indicates that the ALJ considered Ms. Sullivan's notes, it is also possible that the ALJ violated the requirement that she consider all the relevant evidence.

Whether this violation of SSR 06-03p alone requires the Court to remand is a more difficult question. Plaintiff argues that the ALJ's failure to follow SSR 06-03p constitutes *per se* reversible error. Plaintiff cites *Blakley v. Commissioner of Social Security*, 581 F.3d 399 (6th Cir. 2009), in support. But *Blakley* is not directly controlling, because it involved an ALJ's violation of the "treating source" rule, not a violation of SSR 06-03p. The treating-source rule gives controlling weight to the opinion of a "treating source" if certain requirements are satisfied. *See* 20 C.F.R. § 404.1527(c)(2). Specifically, if the commissioner "find[s] that a treating source's opinion . . . is well-supported by medically acceptable . . . techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the commissioner must] give it controlling weight." *Id.* The regulation further provides that the commissioner "will always give good reasons in [his or her decision] for the weight [given to the] treating source's opinion." *Id.* In *Blakley*, the ALJ failed to adequately explain her reasons for discounting the claimant's treating sources. 581 F.3d at 409. The court, following its earlier holding in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), found this to be reversible error. The court explained that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. [§ 404.1527(c)(2)] as harmless error." *Id.* at 410. Rather,

> where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of . . . the procedural safeguard of reasons."

*Id.* at 409 (quoting *Wilson*, 378 F.3d at 547) (citation omitted). The reason for stringently enforcing the treating-source rule is that when a "regulation bestows a 'substantial right' on parties before the agency, . . . 'it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required.'" *Wilson*, 378 F.3d at 547 (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)) (second omission in original)). "[T]o recognize substantial evidence as a defense to non-compliance with [20 C.F.R. § 404.1527(c)(2)] would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory." *Id.* at 546.

The Sixth Circuit has declined to apply the reasoning of *Wilson* and *Blakley* outside of the context of the treating-source rule. *See, e.g.*, *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 656 (6th Cir. 2009) ("*Wilson*'s circumscribed form of harmless error review has not been applied outside the context of the reasons-giving requirement of [20 C.F.R. § 404.1527(c)(2)], and we decline the invitation to extend it to this case."). But there are persuasive reasons to extend the reasoning of *Wilson* and *Blakley* to failures to adequately explain the weight given to "other sources" who have seen a claimant in their professional capacity. One such reason is the importance "other sources" in the modern healthcare system. As the commissioner noted in SSR 06-03p,

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as

> impairment severity and functional effects, along with the other relevant evidence in the file.

*See also Cole*, 661 F.3d at 939 n.4 ("[M]any unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such [non-acceptable-medical-source] counselors. The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care.").

The Court does not today need to decide whether the reasoning of *Wilson* and *Blakley* applies to the violation at issue in this case, because, as explained below, there is not substantial evidence to support the ALJ's disability determination.

**B. The ALJ's Summary Finding That Plaintiff's Husband Was Not Credible**

Next, Plaintiff argues that the Magistrate Judge erred in concluding that the ALJ had given adequate consideration to the function report prepared by Plaintiff's husband. In her decision, The ALJ addressed the function report in a single sentence: "The husband's opinion . . . is given no weight as to the issue of disability; he is not a treating source and has a natural and financial interest in seeking the claimant getting benefits." (Doc. 7-2 at 21). The Magistrate Judge concluded that the ALJ did not err in disregarding the function report. The Magistrate Judge noted that many of Plaintiff's limitations that her husband reported in the function report are in fact incorporated into the ALJ's RFC, and the Magistrate Judge also found that the ALJ's credibility determination was proper. (Doc. 19 at 15).

The Court respectfully disagrees with the Magistrate Judge and holds that the ALJ erred in summarily discounting the husband's function report. It is the job of "the ALJ, and

not the reviewing court, to evaluate the credibility of witnesses." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). A court must accept the ALJ's credibility determinations if they are "supported by substantial evidence." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). But the "ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)). Moreover, "[t]he testimony of lay witnesses . . . is entitled to perceptible weight . . . if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983)). The commissioner has provided a set of factors to be considered in weighing evidence from lay witnesses: "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p.

Here, the ALJ did not rely on any evidence in the record in deciding to give "no weight" to the Plaintiff's husband's function report. Rather, the ALJ relied purely on the intuitive (and commonsense) notion that a husband has a financial interest in the outcome of his wife's DIB case. The problem with this rationale is that, if it is applied in every case, an ALJ will *never* give any consideration to the observations of a claimant's spouse. The other problem with this approach is that it would seem to apply *a fortiorari* to the testimony of the claimant. No one, after all, is more interested in the outcome of a DIB case than the claimant.

While it was of course permissible for the ALJ to take into account the Plaintiff's husband's interest in the case in weighing his credibility, the ALJ should also at least have

considered the degree of consistency of his function report with the other evidence in the record. Plaintiff's husband's function report is largely corroborated by the objective medical evidence in the record. As the ALJ explained in her decision, Dr. Sachin Nagarkar and Dr. Harold Sommerschield both noted that Plaintiff was experiencing memory and concentration problems and anxiety. (Doc. 7-2 at 21). Dr. Nagarkar diagnosed Plaintiff with major depression, and Dr. Sommerschield diagnosed her with generalized anxiety disorder and PTSD. *Id.* The Disability Determination Services (DDS) assessment is largely consistent with the findings of Drs. Nagarkar and Sommerschield. (*See* 7-3 at 7-8).

In the Plaintiff's husband's function report, the husband reported that Plaintiff's "pain limits her ability to perform [work]. She has to nap daily. She has memory & concentration problems. And needs my help." (Doc. 7-6 at 24). In response to a prompt about Plaintiff's personal care limitations, Plaintiff's husband wrote that she "sometimes needs my help with brushing [her hair]." (Doc. 7-6 at 25). Plaintiff's husband wrote that he has to remind Plaintiff to take her medication, and that although Plaintiff does some housework, Plaintiff does not cook because "she has problems concentrating [and] could leave stove un-attended [sic]." (Doc. 7-6 at 26). In response to a prompt asking how well Plaintiff followed spoken instructions, Plaintiff's husband wrote: "not well. Has to be written or reminded." (Doc. 7-6 at 29). Moreover, Plaintiff's ability to follow written instructions is "fair. Needs help." *Id.* Plaintiff's husband also reported that Plaintiff goes outdoors about twice a week but that she never goes alone and never drives because "she is too nervous." (Doc. 7-6 at 27). He wrote that Plaintiff needs help handling money because she "gets confused easy [sic]." (Doc. 7-6 at 28). Plaintiff's husband also wrote that Plaintiff has occasional visits and phone conversations with friends, but that she "avoids large crowds, loud

situations, and long visits." (Doc. 7-6 at 28-29). When asked whether he noticed any unusual behavior on the part of Plaintiff, Plaintiff's husband wrote that she "startles easy [sic]. Emotionally fragile." (Doc. 7-6 at 30). Thus, it is apparent that Plaintiff's husband's function report is corroborated by the objective medical evidence, although it also goes beyond the medical evidence to some extent. The ALJ should have considered the degree of consistency of the husband's report with the medical evidence in making her credibility determination.

Defendant argues that because the ALJ did not have to mention Plaintiff's husband's function report at all, the ALJ acted entirely properly in disposing of the husband's function report summarily on the ground that the husband is an interested party. (*See* Doc. 18 at 21 (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005))). But the fact that the ALJ does not have to mention all of the evidence does not mean that the Court should ignore the ALJ's error when the ALJ has documented her error with respect to a piece of evidence in her decision. Therefore, the Court concludes that the ALJ erred in giving only summary consideration to Plaintiff's husband's function report. As the Court explains below, this error, combined with others, renders the ALJ's decision unsupported by substantial evidence.

**C. The RFC Assessment**

Plaintiff's third and final objection is that the Magistrate Judge incorrectly concluded that the ALJ's RFC assessment is adequately supported by the record. The ALJ used this RFC assessment to formulate hypotheticals that the ALJ posed to a vocational expert, and the expert's answers led the ALJ to determine that Plaintiff is not disabled. (*See* Doc. 7-2 at 49-50, 65-67). Plaintiff specifically takes issue with the ALJ's conclusion that Plaintiff

retained the residual capacity to perform light work "limited to 3 to 4-step repeated routine tasks." (Doc. 7-2 at 46). Plaintiff points out that the ALJ made an express factual finding that Plaintiff has "moderate difficulties" with "concentration, persistence or pace." (Doc. 7-2 at 18). Plaintiff argues that Plaintiff's acknowledged moderate difficulties with concentration were not adequately accounted for by the RFC's "limitation to routine, repetitive work" involving three or four steps. (Doc. 20 at 9). For the reasons explained below, the Court agrees with Plaintiff.

A court's review of the commissioner's RFC assessment is limited to determining whether it is supported by substantial evidence. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Where a claimant has moderate difficulties with concentration, an RFC assessment that finds the claimant capable of completing "simple, unskilled routine" work will generally *not* be supported *by* substantial evidence. *Brown v. Comm'r of Soc. Sec.*, 672 F. Supp. 2d 794, 797 (E.D. Mich. 2009) (finding inadequate a limitation to one- or two-step routine tasks); *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005). This is because such a limitation "'deals with the level of sophistication or intensity of the work that can be done'" and "does not address the frequency of how often the person can concentrate." *Brown*, 672 F. Supp. 2d at 797 (quoting *Benton v. Comm'r of Soc. Sec'y*, 511 F. Supp. 2d 842, 846 (E.D. Mich. 2007)).

As mentioned above, the ALJ made an express finding that Plaintiff has moderate difficulties with concentration, persistence, or pace. Given this finding, the ALJ's RFC assessment that Plaintiff is capable of work limited to three- or four-step routine tasks is not

supported by substantial evidence. This three- or four-step limitation does not account for Plaintiff's moderate concentration problem but rather merely accounts for the Plaintiff's level of sophistication. The ALJ used this inadequate RFC assessment in posing two hypotheticals to the vocational expert. The vocational expert found that there are a significant number of jobs in the Michigan and national economies for workers with a limitation to three- to four-step routine tasks. The ALJ used the vocational expert's answer in determining that Plaintiff is not disabled, and therefore the ALJ's disability determination is not supported by substantial evidence.

The ALJ *did* pose a hypothetical to the vocational expert that accounted for Plaintiff's moderate concentration problem, but the ALJ did not use the vocational expert's answer in determining that Plaintiff is not disabled. Specifically, the ALJ added an additional limitation to the earlier hypotheticals, asking the vocational expert whether jobs would be available if "the individual [were] off-task at least 20 percent of the workday, due to interfering thoughts." (Doc. 7-2 at 67). The vocational expert responded that this additional limitation "would not allow a person to maintain their employment." *Id.*[1] Had the ALJ used the answer to this hypothetical in making her disability determination, the ALJ would have

[1] The ALJ also posed additional hypotheticals to the vocational expert which took into account some of Plaintiff's other claimed limitations. The ALJ asked the expert whether "an individual [who] would need to take a nap as needed, between two to four hours on a typical workday" would be able to maintain employment. (Doc. 7-2 at 67). The expert responded that "[t]hat also would not be conducive to any type of work environment. They couldn't maintain the job . . . ." *Id.* The ALJ asked the expert, "What if the individual would have to take unscheduled breaks, on a regular basis?" *Id.* The expert responded, "That also would be disruptive to any type of work environment, and would not be allowable . . . ." *Id.* The ALJ clearly did not use the expert's responses in making her disability determination, since if ALJ had, she would have found Plaintiff to be disabled.

found Plaintiff to be disabled, and this finding would have been supported by substantial evidence.

Moreover, the facts of this case are distinguishable from those of *Smith*, 307 F.3d at 379, where the Sixth Circuit found that the ALJ's hypothetical limiting the claimant to work that is "routine and low stress" was supported by sufficient evidence. In *Smith*, the ALJ had made a factual finding that the claimant "often" had problems concentrating. The ALJ then asked the vocational expert whether there were jobs in the national economy for someone who is limited to work that is "routine and low stress," and the expert answered in the affirmative. *Id.* The claimant argued that this hypothetical failed to account for his concentration problems. *Id.* The Sixth Circuit pointed out, however, that in making the finding that the claimant "often" had problems concentrating, the ALJ simply checked a box on a Social Security Agency form. *Id.* Moreover, the ALJ had relied on the testimony of four of the claimant's doctors, "who characterized [the claimant's] concentration problems as minimal or negligible." *Id.* The Sixth Circuit therefore found that the ALJ's hypothetical adequately incorporated the claimant's limitations and that the vocational expert's answer was sufficient to support the ALJ's decision. *Id.*

The instant case at first glance would appear to be analogous. After all, in *Smith* the ALJ found that the claimant "often" had concentration problems, and here the ALJ found that Plaintiff had moderate concentration problems. But unlike in *Smith*, where the ALJ had based his assessment that Plaintiff "often" had concentration problems on the testimony of four doctors who characterized the concentration problems as negligible, here all of the record evidence indicates that Plaintiff's concentration problems are more serious.

The ALJ's decision shows that the ALJ made her RFC assessment after considering the opinions and notes of several different mental-health providers, the DDS assessment, and Plaintiff's testimony. (*See* Doc. 7-2 at 21). First, the ALJ credited Dr. Nagarkar's observations that Plaintiff had experienced "reduced concentration and memory" and anxiety problems. (Doc. 7-2 at 21; *see* Doc. 7-7 at 66). The ALJ also credited Dr. Sommerschield's observations, including his observations that Plaintiff was "anxiously dependent upon her husband," "appeared tense throughout [Plaintiff's] interview," and "had mildly pressured speech but was well organized." (Doc. 7-2 at 21; *see* Doc. 7-7 at 2-7). The ALJ did not expressly mention in her decision that Dr. Sommerschield had found that Plaintiff "was unable to subtract serial 7's from 100: '100, 93 and 84'. At this point in the interview she was completely unable to focus and continue with this task." (Doc. 7-7 at 6). As explained above, the ALJ did not mention Plaintiff's social worker, Ms. Sullivan. Like Drs. Nagarkar and Sommerschield, Ms. Sullivan noted Plaintiff's concentration problems, although those notations may simply reflect Plaintiff's subjective reports. (*See* Doc. 7-7 at 92).

The ALJ gave "[s]ome weight" to the DDS assessment. (Doc. 7-2 at 21). The DDS assessment admittedly found that Plaintiff "retains the capacity to perform simple tasks on a sustained basis." (Doc. 7-3 at 11). But it also found that Plaintiff had "moderate" difficulties with concentration, persistence or pace and found that Plaintiff's statements regarding her symptoms were "moderately credible." (Doc. 7-3 at 7-8, 11).

The ALJ considered Plaintiff's testimony, but found her "allegations regarding the limiting effects and the severity of the symptoms of her impairments . . . only partially credible." (Doc. 7-2 at 22). Plaintiff testified that she likes to read, "but I have to reread

sections a lot. . . . I'll get two pages read and not remember what I read, so I'll have to go back and read it." (Doc. 7-2 at 43). She also testified, "I'm fearful that I'm going to forget taking my medication or I'm going to double up on it, so I have to keep a list on the wall . . . . And my husband will check on it [too]." (Doc. 7-2 at 57). When asked by her counsel if she was able to follow instructions, Plaintiff testified

> Some days I might be okay and some days I might get distracted, and forget that I was even [washing the dishes]. Most days I would forget I was even doing it probably. Just this morning I noticed that a plant needed to be watered so I put the thing that we water with in the sink and started filling it up and went to the restroom, and totally forget that I was even doing that until my husband said; "I watered that plant for you."

(Doc 7-2 at 58). The ALJ disregarded Plaintiff's husband's testimony, which, as summarized in the sections above, largely corroborates Plaintiff's testimony about her concentration problems.

After a careful review of the record, there is simply no evidence that is remotely similar to the contradictory evidence from four doctors in *Smith*. Thus, after the ALJ made a finding that Plaintiff had a moderate concentration problem, she was not justified in making an RFC assessment—and basing her disability determination on hypotheticals posed to a vocational expert—that failed to account for this moderate limitation. The RFC assessment is not supported by substantial evidence, and therefore the resulting disability determination is also not supported by substantial evidence.

**D. Remand for Further Consideration**

The Court is mindful that the commissioner's disability determination should be affirmed if it is supported by substantial evidence. But after consideration of the record as a whole—noting, in particular, the ALJ's inadequate RFC assessment—the Court cannot

conclude that the ALJ's disability determination is supported by substantial evidence. The inadequacy of the RFC assessment is further compounded by the ALJ's failure to expressly consider the opinions of Plaintiff's social worker and the ALJ's inadequate credibility assessment of Plaintiff's husband. *Cf. Lohr v. Comm'r of Soc. Sec.*, 559 F. Supp. 2d 784, 793 (E.D. Mich. 2008) ("[A] plain reading of the Regulation indicates that the failure to consider, much less even mention [the] opinions [of two 'other sources'] constitutes reversible error."). Therefore, the case should be remanded to the commissioner for further consideration consistent with this opinion.

## IV. CONCLUSION

For the reasons explained above, the Magistrate Judge's R&R is REJECTED. Plaintiff's objections are SUSTAINED, Plaintiff's motion for summary judgment is GRANTED, and the commissioner's motion for summary judgment is DENIED. The decision of the commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and this matter is REMANDED to the commissioner for further consideration in light of this opinion.

IT IS SO ORDERED.

Dated: March 30, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 30, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk